You may proceed. Thank you. Good morning. May it please the Court, Joseph Seguenza for petitioner. This immigration asylum case this morning presents... I just want you to back up. Your name again is... Joseph Seguenza, S-I-G-U-E-N-Z-A. Thank you. We just happened to have a different name on our paper, so I wanted to get your correct name, Mr. Seguenza. Thank you. Thank you very much. The real problem I have here is whether your client, whether the administrative law judge or the immigration judge, is clearly wrong in her credibility determination as to whether your client is a farmer. And if it's questionable as to whether he's a farmer, it's questionable as to whether he was beat up so he'd give his land back to the native Fijians. Other than his say-so and his sister-in-law's testimony, there's no pictures, nothing, to indicate that he ever was a farmer. Is there? On the record. Admittedly, there are not, Your Honor. However, we believe that the IJ's adverse credibility finding as to whether or not he was a farmer, as opposed to some other occupation, was not supported by substantial evidence. Could you keep your voice up, please? That microphone will pick you up if you speak up. Thank you. Petitioner's position on that would be, Your Honor, that his testimony is uncontradicted and testimony by itself can be sufficient to establish eligibility for asylum, if you will. Corroborating documentary evidence does not necessarily need to be present in a particular case. Except if the immigration judge doesn't find it credible. Certainly. But in this particular case, Your Honor, Petitioner submits that her adverse credibility finding was not supported by substantial evidence. And she did not state a legitimate articulable basis for the adverse credibility finding as to whether or not he was a farmer. Is there? She stated the passport issue, which seems to be contrary to our case law, about whether that can be a basis for discrepancy. And then she cited the marriage certificate. Was there any other basis the IJ cited for finding lack of credibility on the farmer issue? I don't believe so, Your Honor. And that's of concern to the Petitioner here. We believe that he testified that he had cleared land for two years prior to engaging in farming on his own for a period of eight years before he attempted to renew his land lease and ran into difficulties with the native Fijians and the NLTB and has testified that he experienced several incidents at the hands of the natives, including assaults and robberies and harassment of himself and his family, attempted rape of his wife, all in an attempt to farm the land that he was leased and in an attempt to renew the lease with the NLTB. We believe that the IJ's concerns about a different occupation, so to speak, listed on his marriage certificate as, I believe, driver and on his passport as a sales agent, don't go to the heart of the matter. We believe that those are side issues. When was the marriage certificate in relation to these events, time-wise? The IJ apparently had concern that a marriage certificate that was issued 15 years prior to the events in question listed his occupation as a driver. And I believe Petitioner succinctly testified without contradiction or without contrary evidence that he happened to drive a van while he was helping his father some years previous to farming on his own and that it was a side job. Farming is seasonal in Fiji, and he used that to supplement his income or to help out the family. And it was only a part-time endeavor, if anything. So it was six months, right? For a period of no longer than six months, I believe Petitioner testified to. Was it just one six-month period or six months a year? The record is not clear on that, Your Honor. Didn't he testify, though, that he never had any other job but farming? Yes, he did. So that contradicts that statement, correct? Well, we believe that it's not necessarily a contradiction. If it is an inconsistency, it's a minor inconsistency, I believe the heart of the matter is that he was a farmer. It's flatly inconsistent with his contention that this employment would consume up to six months of the year. Yep. What you're explaining to us is that he had one story, and the IJ found other contradictory information, flip-flopping of testimony, and drew an adverse credibility inference on not only that issue of his work but also the varying renditions of the assault, the night of the assault, and the varying renditions of what occurred in the police department. If any one of those three are sufficient under our law, then we have to sustain the credibility determination of the IJ. Now, your view is that we, under the Supreme Court ruling, would be compelled, Supreme Court's idea, that we would be compelled to find the IJ was wrong on that factual determination. How can we do that with the record we have before us where there are inconsistencies upon which the IJ relied to make her determination on credibility? Would Your Honor like me to comment in that respect on the occupation or the driving of a van, for instance? You can handle it any way you want to. It seems to me there are three areas where the IJ has identified reasons why she did not believe your client. If any one of those three will hold up, then we have to find in favor of the IJ's credibility determination under our case law. With the consideration that if the inconsistency, if there is an established inconsistency or contradictory testimony, if it does not go to the heart of the asylum claim, that my understanding of precedent in the circuit is that it can be ignored, so to speak, and other evidence considered to determine whether or not Petitioner is eligible for asylum. That's the general law, but how does it apply here? These sort of go to the heart of things, don't they? These aren't just little minor changes that the date could be wrong on a certificate or something. These are rather substantial areas, aren't they? The van matter, for instance. I believe Petitioner testified that the driving of a van was to help his father when he was assisting his father in a farming endeavor, family farming. And this happened, I believe, 15 years prior to the events in question. The events in question surround his own ownership of land as a farmer rather than assisting his father in helping to drive a family van some 15 years previous to that. In that sense, we feel that it doesn't go to the heart of the claim. The heart of the claim is that Petitioner testified without contrary evidence that he did own land for a period of eight years, had cleared the land prior to that, and when it came time to renew the lease, ran into difficulties with the natives and in his attempts to renew the land, experienced physical injury and harassment and was the victim of robbery, both he and his family, and his wife was. . . What about the inconsistencies at the time of the invasion of the house and the inconsistencies at the police department? You haven't touched upon those, and they also were bases for the credibility determination. Certainly. I believe he testified that when he went to the police department the day after he was visited by the four natives at his house, that the police did not help him, that they essentially excluded him from the station, and there was concern by the IJ, I believe, that whether he was beaten and physically kicked and pushed out of the station. I believe that the Petitioner sufficiently explained regarding the concern of the IJ and said that it could have been, in attempting to explain his testimony, he said that the police had not kicked him physically but had pushed him and excluded him from the police station. In his application for asylum, he doesn't mention getting beaten by the police at all. No. And then in his first testimony, he says he went in to complain about this the next day and he told the police and they refused to take a complaint and they beat him and kicked him out. Correct? Correct. And then when the immigration judge clarified it, he said that he went to the police station and they, by their hand action, wouldn't let him in. Exactly. Well, that's from nothing to entering the police station, making a complaint, getting no relief, getting beaten and kicked out, and to the third version of, you know, you can't come in, we're going to push you so you can't come in. Wouldn't that give some concern as to, you know, which one it was? Well, I believe that AR-207, Your Honor, Petitioner testified, quote, they kicked me out of that place, inferring that they pushed him out, physically pushed him out. He did state to the IJ that he never stated in his declaration or otherwise that he was physically kicked by the police at that time. When was the beating then? Pardon me? He did testify he got beaten by the police. Correct? I believe at AR-207 he said that they beat and pushed him out. Where's the beating? Well, the beating could be the manhandling by the police of Petitioner because he attempted to report the matter to them that day. Unfortunately, the record is bare as to a follow-up as to whether, you know, what the circumstances were regarding if he was in fact beaten or physically manhandled, if you will, and pushed out of the station. So the record is bare on that point. Thank you. I wouldn't be able to speak to that. We'll hear from the government. Thank you. May it please the Court, my name is Jonathan Cohn, and I represent the Respondent, the Attorney General, John Ashcroft. Your Honors, as the immigration judge found, Petitioner's testimony is rife with contradictions and internal inconsistencies. These discrepancies go to the heart of Petitioner's case, and thus substantial evidence supports the immigration judge's conclusion. I think Judge Moskowitz put the nail on the head right away when he pointed out that the inconsistency going to farming actually goes to the root of the matter. Petitioner's entire story is premised upon the allegation that he was a farmer who leased farmland. The rest of the story allegedly follows from what happened when he tried to retain his farmland. This inconsistency thus goes to the heart of the matter. If you look at the IJ's decision on this point, the two reasons for finding lack of credibility had to do with the passport and the marriage certificate. Is that right? And also the fact that Petitioner himself was internally inconsistent in his own testimony, Your Honor. But on the farming, did she say that specifically? He spoke generally about the inconsistencies in the testimony. And if you look at the record, Petitioner was inconsistent. At first he said he was a farmer for every day of his life and he never had any other job. And then once the passport and the marriage certificate were pointed out to him, he then did the double backflip and said, oh, yeah, that's right, I actually did do some other job driving for six months out of the year. I just forgot. The question I have is some of the issues that were found to be basis for lack of credibility are insubstantial and others are impermissible under our law, like the passport. So if you line everything up, let's say there's 20 reasons because there's all sorts of reasons given. If you line them up and 13 of them are either impermissible or not material, but you still have seven left or some number, would we need to remand that for finding a credibility? Because we don't know whether if you took out some of those, the immigration judge still would have found the person credible. What do you think is the proper procedure in such a situation? As Judge Walz pointed out very clearly in the Wang opinion, all you need is just one inconsistency. So even if it was not seven that survived, even for just one inconsistency that survived, that would be sufficient to sustain the immigration judge's conclusion in this case. And, in fact, it's well more than one inconsistency. I think the farming inconsistency by itself is sufficient, but it's well more than that. Petitioner is inconsistent in what happened when the four thugs arrived at his house. He was also inconsistent as to what happened when he went to the police station, as Judge Moskowitz pointed out. All these inconsistencies simply confirm one another, and they confirm the immigration judge's conclusion that Petitioner lacks credibility. And it's very important to remember that under this Court's case law and under the Supreme Court's decision in Elias Icarus, it's insufficient for Petitioner simply to present a plausible explanation for these inconsistencies, and I don't think he's even done that. But a plausible explanation is insufficient because the standard of review is that of substantial evidence, and this Court must affirm unless a reasonable fact finder would be compelled to disagree with the immigration judge. And, Judge Schoen, I'm sorry. You indicated, and I thank you very much, that my statement was sufficient, that if one stands, even though the rest are infirm, we have to sustain. But we do have a case, which probably means more than what my individual question indicated, in Chabacab, the Moroccan case that came out this last year. And I assume that is the basis of your statement, is our Ninth Circuit law. Yes, Your Honor. Are you familiar with that case? The Chabacab case? Yes. I'm probably mispronouncing it. But yes, Your Honor. I think that case also pointed out that one inconsistency suffices to sustain an immigration judge's decision. Yes. If one of the – if there are many of them and some of them are deficit, if one stands, then the credibility determination stands. But also didn't the immigration judge here have an alternate finding saying, even if the credibility weren't a problem, I still would deny the petition because of the circumstances and farming may be more difficult for him, but it doesn't really – this whole circumstance doesn't rise to the level of discrimination. That's right, Your Honor. Even if you were to find Petitioner credible, and I don't think you can, especially in light of the standard review, but even if you did, there's an alternative basis to affirm the decision below, that being Petitioner was not persecuted even under his own testimony. Well, let's pursue that for a moment. Let's assume that we reversed the board on credibility. I assume that you'd have to find some way that what he said, if credible, was not sufficient. How would you do that? He had some pretty strong assertions of things that have happened to him and his family. We have gone as far as I know, as we've gone so far in Prasad, which happened to be a native Indian in Fiji. But would Prasad be far enough? Does it stretch far enough to govern this case if you assume the credibility determination is to be reversed? Yes, Your Honor. I'm glad you pointed out the Prasad case because I think that's the one that's most clearly on point. Prasad pointed out that a single incident of violence is insufficient to amount to persecution. And that's what you have here. There was one incident. There was one incident when the fourth thug showed up at his house and slashed his arm and made some threats. But it's, again, just a single incident. Now, Petitioner tried to make some distinctions between Prasad and his case. But, again, the standard of review is that of substantial evidence. So you have to ask yourself whether these distinctions are so compelling that a reasonable fact finder would be compelled to conclude that the immigration judge erred. And I don't think that's the case. Could I come at it at a totally different angle? Assume for the moment that we believe that the immigration judge was correct and even we don't think he's credible. There are cases where the Ninth Circuit has reversed denials of asylum for Indo-Fijians because of persecution against them in Fiji, correct? I sat on a panel that did that, at least as to one case. And there are other cases where Indo-Fijians have been allowed to stay under asylum in the United States.  So aren't we saying that, in general, there's persecution against them, past persecution that's recognized by our decisions, but we don't think you were telling the truth about it here, so notwithstanding that other Fijians, Indo-Fijians, get to stay, you don't get to stay? Isn't that kind of a weird result? Well, no, Your Honor, because the mere fact that some people in a country have been persecuted does not mean that everyone of that race or nationality or religion has been persecuted. Petitioner has made a pattern and practice claim in the 11th hour in his motion to reopen. He didn't make that claim to the immigration judge. But a pattern and practice claim is something which exceeds only in extremely rare circumstances. In the Kotes case, this court pointed out that he has to show systematic persecution, and the example they gave was the Holocaust in Nazi Germany. By contrast, the court pointed out that widespread political violence of the sort you had in El Salvador was insufficient to constitute systematic persecution, rising to the level of a pattern and practice claim. A fortiori, the looting and other events going on in Fiji don't rise up to a pattern and practice claim. At the very least, the board's decision on this matter in the motion to remand is not so wrong that a reasonable fact finder would be compelled to disagree with it. Well, let me follow up on that. So we then have to look at it on an individual basis unless there's a systematic claim, correct? That's exactly right, Your Honor. And then here, he has, at least for the 11 months prior to leaving Fiji, lived in a completely different location where there was no evidence of any harassment. Exactly, Your Honor. In confirming that, his sisters and his brother and his in-laws have lived in Fiji, and there's no evidence that any of them has suffered any problems. That just reinforces the position you're taking, Your Honor. So even if he showed past persecution, the presumption that it supports for continued or future persecution would be overcome by the fact that it didn't occur once he moved out of that location? That's exactly right, Your Honor. And again, I think that there's no reason even to go into all this stuff because Petitioner's evidence is rife with the inconsistencies and contradictions, and a reasonable fact finder would not be compelled to conclude that the immigration judge erred in his credibility finding. If there are no further questions, Your Honor, I'd be happy to sit down. Thank you. Thank you. You can have a minute for rebuttal. What about the fact that he lost, if it's true, he lost his farm, he's not living there anymore, and where he was living he was writing letters and he wasn't persecuted, but there's no evidence that he was persecuted for at least 11 months? I believe that there's testimony in the record that the police were looking for him, according to his brother, when he spoke with his brother after he had left Fiji. So there is some inference there that the problem would have been ongoing for him if he had remained in Fiji. Excuse me. But looking for him for what? How do we know that they're not looking for him to take his complaint because he's sending the letters and complaining? Well, there's nothing in the record to establish either way on that point, Your Honor. Isn't the burden his? I believe so, but there was no inquiry by either the IJ or the government counsel as to that point. Excuse me, if I may, just to wrap up here. The record shows that there have been two coups in a matter of 13 years in Fiji and that there is no stability in Fiji in terms of – I'm sorry you let your voice drop. I'm sorry. There have been two coups in Fiji in the past 13 years, and though things may have improved somewhat within the last six months or so, petitioners submissed today that if you're an Indo-Fijian living in Fiji at this time, you would still be subjected to harassment and displacement and attacks, both verbal and physical. There is a reasonable fear – But the record – it isn't anything in the record that today, this day – you're saying that there's something in the record that this day that's – No, not this day, Your Honor. In the aftermath of the 2000 coup, that's – I believe that the record does establish that Indo-Fijians were displaced from their homes and were subjected to looting and robberies and attacks. And I believe that – Thank you, Mr. Seguenza. Thank you very much. The case of Dale v. Ashcroft is submitted. Thank you. The next case for argument is Pernod.
judges: Wallace, McKeown, Moskowitz